Good morning. The first case for oral argument this morning is In Re Revstone Industries, LLC, et al. Mr. Toll. Good morning. May it please the court, Sheldon Toll of the law firm of Sheldon S. Toll, PLLC, for the appellate Ascalon Enterprises, LLC. This is an appeal from the final order of the U.S. District Court for the District of Delaware, affirming the confirmation order in the case of In Re Revstone. Yes. Can you start out by explaining your basis for standing here on appeal? The basis for standing, I believe we have a basis for standing under the aggrieved person test, although I would like to argue, if I have the time, and by the way, I'd like to reserve three minutes for rebuttal, that the court should disregard the aggrieved person test, but I believe we have standing under that test in any event. Didn't you argue in the District Court that you had standing as a creditor? That's correct. All right. What's your position now? I believe there are two basis for standing here. Number one, Ascalon Enterprises ran a self-insured health plan that was used by all the companies in the Revstone umbrella. When Revstone filed for bankruptcy in December 2012, and by the way, when I say Revstone, it includes the Revstone in this case, and the term Revstone is a shorthand for four companies, four debtors. The debtor by Revstone, which is the largest or was the largest of the companies, there was a company called Sparra, which was smaller than Revstone. Both Revstone and Sparra were holding companies that held... We're with you on the background, so you should read the law. Okay. Ascalon conducted a self-insured health plan and it had filed numerous proofs of claim in the bankruptcy case. Those claims were dismissed, but it also had an administrative claim for amounts held during the bankruptcy of the Revstone case. Administrative claims are brought by motion and not by proof of claim. Its administrative claim was denied, but it was denied without prejudice. That appears in the record of the case. I have that written down here. Let me somewhat cut to the chase, at least for me, Mr. Cole. In your required brief here, you argue that Ascalon is justly apprehensive that if Revstone discharges its tax liability, the tax authorities will seek to impose liability on Ascalon. Right. Did you raise that issue for the first time here? Didn't you raise that issue for the first time here? Yes, I did raise that for the first time here, Your Honor. The district court, of course, did not decide any basis for standing. No. It just said standing issue was not before it, so really the record wasn't developed. The cite to Revstone, Ascalon having an administrative claim that was denied without prejudice, appears in the record at page A, appendix A, page 16, where the judge wrote in that it was without prejudice. Let's go back to the reply brief. All right. You say Revstone cites no order of judgment for the bankruptcy judge to have a finding about whether or not this was a liquidation or reorganization, and then assert that courts must speak by orders and judgments, citing a case of ours. Is it really your position that if a judge puts findings and conclusions on the record at a hearing, that those aren't statements of the court which we're to take cognizances of as an appellate body? I mean, there are trials all the time to the bench, and there are findings of fact and conclusions of law that are issued, and then a separate judgment. Are you saying that the findings and conclusions that a court labors over and issues aren't the things that we're supposed to look at because they didn't put it all into the judgment? I think in the specific reference to bankruptcy confirmation orders, they're very elaborate. They run for some 20, 30 pages. They're drafted by numerous lawyers, and they generally are expected to contain all of the parts. That may generally be the case, Mr. Toll, but you've taken the position that there's nothing here in the record that we can look at because it's not in a judgment order. But the bankruptcy judge spoke to this. In fact, didn't he declare as a matter of fact that Revstone, as a holding company, would continue to operate in substantially the same manner as it did before filing a bankruptcy? Well, he said that as a holding company, if they continue to liquidate, that would be basically their business. Revstone was, of the four companies, the three had been completely liquidated before the confirmation hearing. Well, I just paraphrased. Isn't that a finding of fact? Well, the judge said that, but the confirmation order contained findings of fact and conclusions of law. They're supposed to be comprehensive. Stop, see, because that's what I was trying to get you to speak to. They're supposed to be comprehensive. We have a judge speaking on the record at a hearing. You're telling us we can't pay attention to that? I think that's what the cases hold. Give us one case, any case, someplace that says if a judge makes a statement on the record that that is off limits because it didn't make it into a written judgment or order. I think I cited a case in my reply brief to that effect. Well, I guess we'll have to disagree on what the New Castle County case means when it says what it says. That's a position that would take off the table stuff that happens every single day in appellate courts all across the country. But leaving that aside for a minute, why don't you speak, if you can, to the issue of whether or not this tax liability that you speak of has a root in fact or in law. You've said it's the 800-pound gorilla. Right. But what do you have that would prompt us to say that's a real and a genuine and a concrete kind of an injury that we can look to when we're wondering about standing as opposed to something about which you are justly apprehensive? Well, at the time of the confirmation, Sparra still had two companies that it was still holding. But the only evidence in confirmation was the declaration of John V. Donato, the chief restructuring officer. And he said in his declaration that he was going to sell those companies. So obviously the plan here was to sell all the assets, liquidate all the assets, and distribute them to creditors. That's a classic liquidating plan. But it was confirmed as a plan of reorganization. Sure, we're aware of that. What I'm trying to get you to speak to, if I can, is your assertion that this means there's going to be a tax liability for Ascon. Your whole claim is, as I understand it, don't call this a reorganization because if you do, Ascon is at risk for millions of dollars in tax liability. I'm trying to get you to get specific about that. What other than speculation do you have for that proposition? Because that seems to be the heart of your concern. How would that work? Well, liability companies generally are pass-through entities. They're tax-like partnerships. But to have that liability actually occur, we don't know if it ever will or not. I mean, this is a claim that is ephemeral. We don't know how much it will be.  Doesn't the case law on standing clearly say that we have such an imprecise claim? You don't have standing in a bankruptcy appeal to complain about the court's confirmation order. Well, with all due respect, I don't think it's ephemeral. It's a matter of record here that Preston either had or would be liquidating all of its assets. And Preston won't have the other companies. When you sell assets, it creates a taxable limit. The tax people have done nothing to exercise their claim against Escalon, right? Well, it's not barred by the statute of limitations. It's only barred by the discharge that was received. At this point, though, Escalon made an election to have Rust own a C corporation, right? That's correct. Okay. So in order to get to the liability you're concerned about, a series of things have to happen. Mr. Donato or somebody acting in the name of Rust own has to override the election Escalon is the sole member made. Right. And that's a question whether the manager can do that in the teeth of what the sole member says, I suppose. I suppose there would be some dispute on you. I can't imagine you'd take that lying down. There would be some fight about it, wouldn't there? Absolutely. Yeah, okay. So you'd have to get through that fight. And then you'd have to have a taxing authority say, well, because this was a reorganization and not a liquidation, we've decided that we're going to pursue Escalon. So then there's a discretionary call that has to be made by a taxing authority, right? Right. Okay. And then I'm assuming you wouldn't take that lying down either. No. Okay. So then there'd be a fight whether they can reach back in time to a point where they were technically a C corporation and there'd be that dispute to resolve. So there's at least three steps that would have to happen which involve discretionary calls and legal battles before you get to the point where you'd owe tax, if any, right? There would be litigation. There's no question about it. But the point is, and what I wanted to argue is, under the agreed person test, this was a test, a judicially adopted test. Just assume for me with a second that I agreed there was standing. Say there was standing. Right. On the merits, how do you have a case here? than an 800-pound gorilla? Well, it's a fact that somebody owes tax liabilities for the liquidation of Redstone's assets. Well, somebody, however, is clearly a speculative suggestion if we get to the next question, which is who, right? You're asking us to speculate. I don't think it's speculation, Your Honor, respectfully. The only things that are certain in this world are death and taxes. Yeah, but who pays the taxes is what's important here. Your assumption is Ascalon is going to be on the hook, and that's the question that I'm struggling with, because I'm not sure how you get to the point, without speculating, that Ascalon is going to have it. Maybe the taxing authorities are going to say, we really want to get somebody, and the person we're going to get is Redstone in the end, and if there's no there there anymore, I guess we're out of luck. I suppose that's one endgame, right? That's true. Okay. Then how can we say you've made your case here on appeal, since that's certainly a plausible outcome? The way I would state it in its simplest form is Ascalon exercised an election that taxes were paid for by Redstone et al. Redstone et al. has received a discharge, which means they don't have to pay that harm. We did it with the intention that they would pay it, and they did something so that they don't have to pay it. Why does that mean you'll have to pay it? That's the point, right? You've got to show that since they don't pay it, we're on the hook. They're going to come after us. That's our harm. How do we get to there without guessing? I believe that what I just said is sufficient harm under the normal rules of appellate standing. It may not be sufficient harm under the aggrieved person test, and I believe the aggrieved person test, similar to the equitable rootless test, which Judge Krause in the one-to-one communications case in the concurrence, put a wrong opinion saying that maybe the court shouldn't follow that anymore. And I respectfully submit maybe the aggrieved person test is inappropriate in this case. Okay. I'll repeat. Assume you've got standing. On the merits, how do you win? Say we were to agree. You've got standing. Your assertion is we should win this appeal. You should overturn the bankruptcy judge because we're going to be harmed. But even if you've got standing to make that argument, it's got a pretty big element of speculation in it, doesn't it, Mr. Dole? What? That you'll be on the hook for taxes. You meaning Askew. I'm not you personally, obviously. Well, I believe it's sufficient harm for Article III standing. All right, Mr. Dole. We'll have you back in the room. Thank you. Thank you. Mr. Kornfeld? May it please the Court. Alan Kornfeld, Michelski, Zeland, Jones for Appley, Redstone, LLC. Your Honor, you've heard us ask about standing throughout Mr. Dole's time at the podium. The district court never addressed standing, correct? That is correct. In fact, I think the district court said you didn't timely object. That's exactly what the district court said. We didn't timely object, and there was no cross-appeal to raise standing. Right. And our position, Your Honor, is that standing is not waived at any level. Standing can be considered by this Court, sua sponte, whether or not we raise it at all. Okay. That being the case, are you arguing that prudential standing is lacking here or Article III constitutional standing? Or appellate standing. Or appellate standing, which I'm arguing. Appellate and prudential. Your Honor, I'm arguing that appellate standing as set forth by this Court in PWS is lacking here. Just to be clear, you've conceded that there's Article III and prudential standing, right? Yes, Your Honor. So there's bankruptcy standing, but not appellate standing. Not appellate standing, correct. Yes, standing as a person of interest in the bankruptcy court is a broader concept than appellate standing. Right. So why isn't it enough for, as Mr. Toll has stated, for them to say, we had, even if you ignore the tax issues here, we have standing because we were, you know, we had these administrative claims and we had also filed certain proofs of claim. Well, that's exactly the problem, Your Honor. They filed proofs of claim. They made a motion for an administrative claim. The proofs of claim were disallowed. The administrative claim was rejected by the Court. They didn't appeal the denial of the proofs of claim. They didn't appeal the denial of the administrative claim rejection. So it's the fact that they didn't appeal those things. Well, it's even more than that. It's the fact they didn't file proof of claim asserting that they have contingent tax liability, which they had to do. If you look at the definition of what is a debt under 11 U.S.C. 1015, a debt includes contingent, unliquidated claims that may arise in the future. Well, Mr. Court, feel free to ask you. They are the sole member of Revstone, right? That's correct. There's nobody else. There's no other owner of this outfit, right? That is correct. They are an equity holder. Okay. So if they don't have an interest in tax liability, whether it flows through or it stays at Revstone, who would? They're the only person who owns anything in this company. Well, they're saying that they have an interest in tax liability, and if that's the case, what they had to do was file proof of claim saying that they were a creditor. The only owner, the one, even if, I'll repeat, even if there's no pass-through, who takes the economic hit for this? The Revstone thing or the owner behind the Revstone thing? Well, the owner behind the Revstone thing can have liability, but here's where the rub is, Your Honors. It's that when they didn't file a proof of claim here, they're not a creditor. If they're not a creditor, they're not affected by the discharge injunction. But the statute, the test is a grieved person, right? It's not creditors. It's a grieved person. If the owner whose interest is clearly affected by a tax liability, whether it passes through or not, is not aggrieved when its entity, the thing it owns, is hammered with a tax, who's got an aggrievance in that regard? Your Honor, I would agree with you that the owner is a grieved person when they're hammered by a tax liability, but as your questions of Mr. Toll indicated, there is a long series of steps that Asperon has to go through to show that it is actually aggrieved by the tax issue. Well, that's if there's pass-through. I'm saying ignore pass-through. You've taken the assertion that they're not aggrieved. My question to you is, assume there is no pass-through, that there's a tax that's going to be owed, and it's Redstone's tax. They're the owner. That's their entity. It hits that entity. How are they not aggrieved? They would be aggrieved if they were held to owe tax, but the tax liability was discharged in the bankruptcy case for Redstone. Well, that's the whole issue, right? Their assertion is, we have a real and genuine risk. It's not imaginary. It's not fanciful. It's a real risk because this thing looks for all the world like a liquidation, and a taxing authority might say, okay, there's a tax. This case was filed in December 2012. No taxing authority has said Ascalon has any tax liability since December 2012. The case was confirmed in the middle of 2015. No taxing authority has said that Ascalon has any tax liability. The discharge injunction, that's a great merits argument. Is it enough of an argument to say they can't even stand up in court and make the claim? In other words, they don't even have standing to come in here and say, hold up, wait a second, think about this. I think it is because we're dealing with the discharge injunction. If we step back for a minute, whether the discharge injunction is proper or not, we're not dealing with the issue of whether conceivably they have tax liability and whether that conceivable liability gives them standing. So if you frame the standing issue in a discharge injunction context, the discharge injunction context deals with creditors. They have to establish that they're a creditor in order to come into this court and say, we have standing. They haven't established that they're a creditor. I would agree with you, they are an owner, but they're not a creditor. If they're not a creditor, they don't have standing. I thought the test we had was a grief basis, but maybe I'm mistaken about that. Let me ask you this. In the plan overview, and this is something that Mr. Cole points to, the statement is made, aside from the Revstone SPAR liquidation trust assets, all assets of each debtor, including interest in any non-debtor subsidiaries, will be liquidated or retained for the benefit of creditors. Now, that sounds like all the world to me, like you're liquidating. You're not reorganizing, you're liquidating. Why is it an absurd notion for the Esquimalt folks to come in here and say, the plan says they're liquidating, it's a liquidation. It's wrong to call it a reorganization. What's wrong with that argument when it says it's in the plan? What we're doing is what we did pre-confirmation. We're holding companies. We never had any operations, whether it be at Revstone or SPAR, other than to hold other companies. I think that's their argument, is that a holding company holds, but you're not saying you're going to hold. You're saying you're going to get rid of. Your business is not going to be to hold these companies. It's going to be to dispose of these companies, and that's a liquidation. Well, we also say that we're going to use and dispose of assets. So what are we doing to use the assets? One of the assets, a SPAR subsidiary, Fairfield, we still own and are running and are in a sale process right now. But you're disposing of it. That is correct. The end game here, bluntly stated by you folks, is in the end there will be nothing in Revstone, and there will be nothing at SPAR. The only thing that will be left is chosers in action held by the SPAR liquidation trust. Am I getting that right? There may be some liquidating trust that holds causes of action. Maybe I misread that. You read that correctly. There's a liquidating trust that took over the causes of action and is prosecuting those causes of action. Other than that, the plan is get rid of everything, right? The plan is use it until it makes sense to sell it, and ultimately sell it. And that has been what Revstone has been doing since before 2012 when it filed for bankruptcy. It filed for bankruptcy because it couldn't monetize what it owned quickly. It couldn't monetize what it owned at an amount necessary to continue to stay in business long enough to monetize the rest of what it owned. Is there a difference between a holding company which holds and a holding company which is actively and vigorously trying to dispose of all its assets? I think at times there could be a difference. At times there is no difference. I think right now there is no difference. We're holding and operating one asset in particular. Right now we're selling others. There's no plan to stay in business, is there? There's not a plan to stay in business. We are monetizing the assets. Ultimately we're going to sell the assets and pay creditors. That's what the plan that's been put in front of you says. But we're not one of those companies that you've often seen where everything is put into the trust. The trust is under the supervision of the bankruptcy court. The bankruptcy court vets and approves every decision to sell. We have a CRO who's running the company like a CEO would. Just for my information, I don't understand it. Since the plan is to liquidate everything, why was this framed as a reorganization? There must have been a reason to call it a reorganization, to set it out as a reorganization, when the plan itself says we're liquidating. It was framed as a reorganization because we were faced with the prospect of having to continue to operate and stay in business with respect to certain companies until it made sense to sell them. With at least one company, it hasn't made sense to sell it. So we've had to operate that company. We're doing business. We have a board. We have a CRO. We are a business that, again, continues to operate. Ultimately, we will turn operating assets into cash and pay off creditors. That's what we're going to do. But we had to operate. We couldn't just liquidate assets upon confirmation or shortly thereafter. That would not have maximized recovery for creditors. So that's why the CRO is, in the plan, tasked with maximizing recoveries for creditors. If I may turn back to standing for a moment. Well, now, you have argued standing since the very beginning, right? Yes, Your Honor. We argued standing in the bankruptcy court. Was that Article III standing? It was Article III standing. But the argument here is appellate standing, and the point is, again, as — Do you still have the same position on Article III standing? I think we would have the same position on Article III standing, Your Honor, but the real focus of our standing argument at this juncture is appellate standing. I'm confused now because I thought a minute ago you said you conceded Article III and prudential standing and we were just talking about appellate standing. So where are we? I'm talking about appellate standing, Your Honors. That is the argument at this level. We did make the Article III standing at the lower court. But the problem is one of speculation for Ascalon. Ascalon can't show that the discharge injunction for Revstone discharges Ascalon's tax liability. The discharge injunction for Revstone discharges Revstone's liability. If the tax authorities think Ascalon has tax liability, the discharge injunction doesn't change their world. So that's a serious problem with what Ascalon is doing in terms of having standing to come in here. Isn't that their point? They're saying if it's a liquidation, then they won't be on the hook. They can't be on the hook by law. It is only because you framed it as a reorganization that they have any risk at all in that regard. That seems to be the claim itself. I think what they're saying is the discharge injunction is changing their world. Not so much, although they couched it in terms of whether this is a liquidation versus a reorganization. What their claim seems to be is that a discharge injunction, which is after all what the appeal is about, somehow affects their liabilities. Yeah, but what's wrong with the logic of their position? They're saying the discharge injunction only can exist by virtue of the way you chose to frame this. That if you hadn't framed it this way, you framed it as a liquidation, then there would be no risk. What's wrong with the logic of it? I mean, ultimately it may be speculative, it may not have legs, but the logic of it, what's wrong with the logic of it? There's nothing wrong with it, but if they thought that they had liability, then they become a contingent creditor with contingent liability. They should have filed a proof of claim. They didn't file a proof of claim. What Bankruptcy Rule 3003 says, if you don't file a proof of claim, then you're not a creditor. There's no proof of claim that they filed that says, we have a contingent tax liability because of what you've done or what we've done with your election, and we're afraid that you might change that election, so we have a contingent liability. If that was the case, they should have filed the claim. They did not. They're not a creditor. They don't have standing as an aggrieved person. That's the problem. It's not the logic. The problem is how they execute it. Thank you, Mr. Pointfield. Thank you, Your Honor. Mr. Toll, we'll have you back on rebuttal, sir. I don't have anything to rebuttal. Very well. Thank you very much, counsel. We appreciate your arguments. We'll take the matter under advisory.